Janet H. Ferguson,            :
           Appellant         :
                                    :
         v.                  :
                                    :
Zoning Hearing Board        :     No. 437 C.D. 2022
of the City of Erie             :     Submitted: December 30, 2022

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: June 16, 2023

Janet H. Ferguson (Ferguson) appeals from the April 5, 2022, order of the Court of Common Pleas of Erie County (trial court). The trial court affirmed the January 3, 2021, decision of the Zoning Hearing Board of the City of Erie (Board), which approved a dimensional variance sought by PE Real Estate Holdings, LLC (PERE).[1] Upon review, we vacate and remand.

## I. Factual & Procedural Background

In November 2020, PERE sought a dimensional variance for its plan to construct a nine-unit, three-story building with rental apartments on vacant lots at

---

[1] PERE, the equitable owner of the property at issue, has not intervened in this matter.

824 and 828 West 2nd Street in Erie near the waterfront.[2]  Reproduced Record (R.R.) at 2a.  PERE's application sought the variance to allow 84.6 feet of front yard setback space facing 2nd Street.  *Id*. at 3a.  This greatly exceeded the amount allowed by Section 205.11 of the City's Zoning Ordinance (Ordinance)[3]; based on the Ordinance's formula, the maximum permissible front setback for this property is 12 feet.[4]  *Id*. at 34a; Ordinance § 205.11.  In its application, PERE explained that the variance would allow it to situate a driveway and off-street parking in front of the building.  *Id*. at 4a.  This configuration was needed because the adjacent lots and existing buildings on either side of the property did not have compliant side and rear setbacks and would not permit a sufficiently wide driveway on either side of the proposed building to access parking in the rear without forcing the building to be too narrow or too tall to reasonably develop.  *Id*.  PERE had previously been denied a variance for a 12-unit version of the building.  *Id*. at 22a.

A hearing on PERE's variance application was held via video (due to the COVID-19 pandemic) on December 8, 2020.  R.R. at 35a.  Phillip Gesue (Gesue), the principal of PERE, testified that he understood local opposition to the initial unsuccessful 12-unit plan and since then had met with community groups and leaders, which led to downsizing and revision of the proposal that he hoped responded to the input and feedback.  *Id*. at 42a-43a.

---

[2] PERE also applied for conditional use approval for this project, which is the subject matter of the companion case *Ferguson v. City Council of the City of Erie* (Pa. Cmwlth., No. 436 C.D. 2022).

[3] City of Erie, Pa., Zoning Ordinance (2021), No. 80-2005, as amended.

[4] Section 205.11 of the Ordinance provides that front yard setbacks must be the "average depth of the existing structures located between two intersecting streets" plus or minus 5 feet.  The average depth here was 7 feet, so the maximum compliant front yard setback would be 12 feet. R.R. at 34a; Ordinance § 205.11.

Brian Weber (Weber), the project architect, likewise testified that the current proposal was for a smaller building that accommodated neighbors' concerns about privacy and blocking of sunlight. R.R. at 48a-49a. The plan complied with all dimensional restrictions except for the front yard area, and the requested variance was to ensure ample off-street parking in response to neighbors' concerns. *Id*. at 46a-47a. Weber stated, consistently with PERE's application, that the variance was needed because non-conforming older buildings on the adjacent lots forced constraints on the ground design of the new plan. *Id*. at 50a.

Susan Dey (Dey), and Pete Frisina, who are local realtors, testified in favor of the project. R.R. at 61a, 72a-73a & 79a. Dan Dahlkemper (Dahlkemper), the current owner of the property and a longtime member of Erie's advisory design review committee, testified that some flexibility is appropriate here in light of the advantages that development like PERE's project can bring to Erie. *Id*. at 64a-65a. Local residents Robert Sprickman (Sprickman) and Laurie Edwards (Edwards) testified in opposition to the project. R.R. at 81a-82a & 89a-90a.

Ferguson testified in opposition to the project. She owns 60 apartments in the area, lives adjacent to the proposed project, and attended the community meetings with PERE. R.R. at 75a. She believed a nine-unit rental property or perhaps a smaller six-unit version could be built closer to the 2nd Street side of the lot with parking in the rear on the waterfront-facing side of the property. *Id*. at 76a & 78a. She opined that the current proposal situating the building farther back from 2nd Street will block current residents' views, sunlight, and fresh air. The east side already has a paved single-lane driveway that could be improved and expanded to a 20-foot driveway for the project. *Id*. at 76a-77a. She took umbrage at describing the neighboring existing properties as non-conforming because they "most definitely

3

conformed" when they were built about 100 years ago. *Id*. at 77a. She added that the status of the adjoining lots is "not a reason to build a non-conforming structure on this lot" that benefits PERE but negatively impacts the neighbors, particularly since the 84.6-foot variance sought for the front area so greatly exceeds the Ordinance's formula maximum of 12 feet. *Id*.

During the hearing, Ferguson's counsel, James Greenfield (Greenfield), asked if he could question PERE's witnesses, but the Board's chairperson stated that he would "rather if you have something to say that you say what you have[.]" R.R. at 83a. Greenfield was then sworn in and testified that he did not believe PERE's witnesses had established a hardship sufficient to warrant the requested variance, that a smaller project of six units would be compliant and not negatively impact neighbors, and that the proposed project would not be in scale with the neighborhood. *Id*. at 84a-87a.

After the hearing, the Board voted 3-1 on the record to approve the variance. R.R. at 94a-95a. In its subsequent January 2021 decision, the Board found that due to the neighboring lots with buildings that did not comply with the Ordinance's setback requirements, the PERE property was "crowded." *Id*. at 33a. This presented unique physical characteristics that constituted a hardship not of PERE's making. *Id*. The Board added that the proposal would not negatively impact the neighborhood and was the "least modification necessary" for the proposal. *Id*. at 34a.

Ferguson appealed to the trial court and filed a motion asserting that she had been barred from cross-examining PERE's witnesses at the December 2021 Board hearing. Original Record (O.R.) #13. She asked for the opportunity to challenge PERE's assertion of a valid hardship warranting the variance and for the

4

trial court to "take additional evidence through the cross-examination of all witnesses who testified on behalf of PERE before the [Board]." *Id*. The trial court granted Ferguson's motion in a June 2021 order. R.R. at 236a. The order stated: "The [Board] shall schedule a supplemental hearing and follow all applicable procedures for notice and production of the same witnesses who appeared at the hearing on 12/8/20. . . . Ferguson shall be permitted to cross examine witnesses and provide evidence." *Id*.

The trial court had issued a similar order in the companion conditional use matter; therefore, on July 21, 2021, the Board and City Council (Council) held a joint supplemental hearing on both matters. R.R. at 99a. At the outset, the City's deputy solicitor, Catherine Doyle (Doyle), stated: "The trial court has not remanded the case but has opened up the hearing to hear additional evidence, limited evidence regarding cross-examination of [PERE's] witnesses." *Id*. at 103a. Doyle also stated that "both of the boards have made a final decision, and the case is currently before the trial court. This is merely to hear additional testimony as provided in the [trial] court order, and there will be no further deliberations or decisions by either board." *Id*. at 105a. Doyle later averred that because the trial court had not formally remanded the matter, the Board did not have jurisdiction to reconsider its previous grant of the requested variance. *Id*. at 145a.

During cross-examination by Ferguson's counsel, Weber, the architect, stated that when PERE met several times with community members and neighbors, interference with their views was not among the concerns raised,[5] so that was not a consideration when the project was being redesigned. R.R. at 112a-13a. He did not

---

[5] PERE's documentation from those meetings indicated concerns were expressed over the proposed building size and density, parking, privacy of nearby buildings' windows, and sunlight and shade. R.R. at 112a.

5

recall discussions with Gesue about further reducing the number of apartments after the first reduction from 12 to 9 units. *Id*. at 115a. In response to renderings devised by Ferguson's expert, Patrick Cooper (Cooper), Weber believed that placing the driveway in a tunnel through the middle of the building on the ground floor so that parking could be in the back would be cost-prohibitive for a three-story building with only nine planned units; it would need at least one more floor and probably exceed the Ordinance's height limits because the resulting split ground floor units would be too narrow to be usable as apartments. *Id*. at 116a-17a. He added that such a design would not be consistent with the neighborhood's visual character. *Id*. at 117a.

Weber stated that Ferguson's proposed plan with 12-foot-wide driveways on the sides of the building would conflict with the Ordinance's buffer requirements and would also entail grading and stormwater drainage issues due to the extensive impervious paving needed, which would not be the case with the current plan. R.R. at 122a-24a. Also, 12-foot-wide driveways would be insufficient for fire engines to reach Cooper's proposed rear parking area, turn around, and depart; the current plan with parking in the front would allow easy access for emergency vehicles. *Id*. at 125a-26a. Fire engines would not be able to access the property from Front Street in the back of the proposed building because the undeveloped land there, which is owned by the Port Authority, is sloped and too soft. *Id*. at 127a.

Gesue acknowledged on cross-examination that waterfront views from the apartments will make them more attractive and enhance the economic feasibility of the project. R.R. at 131a. He added that having nine apartments is more economically feasible due to the marginal and incremental costs of each unit within

6

the overall project; having fewer units will make each one more expensive to build and given the economic challenges in Erie, rents can only be so high to offset the break-even cost of acquiring and developing the site. *Id*. at 131a-32a. He did not believe he could make it work with only six units, even if that approach might require a smaller variance or none at all. *Id*. at 133a.

Objectors presented Cooper, a civil engineer with real estate development and zoning experience. R.R. at 135a. His firm created the exhibits presented to Weber during his testimony. *Id*. at 137a. He believed his designs would not violate the Ordinance and disputed Weber's opinions that they would not be feasible due to buffering, drainage, grading, and emergency access issues. *Id*. at 138a-40a.

After the July 2021 supplemental hearing, the Board did not alter its January 2021 decision. The matter returned to the trial court, which took no further evidence and held argument in December 2021, at which Greenfield and Doyle appeared along with Arthur Martinucci (Martinucci), who is the newly appointed solicitor and counsel for the Council in the companion matter. R.R. at 175a. Greenfield explained that because the trial court's order for the supplemental hearing expressly allowed Ferguson to present evidence, Cooper was permitted to testify as Ferguson's expert even though he had not been part of the original proceedings before the Board. *Id*. at 189a-90a. Martinucci disagreed, referring to the order's express statement that it was to include the witnesses from the initial hearing for cross-examination purposes and the fact that the order did not formally remand the case or direct the Board or Council to reconsider the matter based on the substance of the supplemental hearing. *Id*. at 200a. Martinucci did not believe the Board or Council had jurisdiction to consider Cooper's testimony or reconsider the previous

grant of a variance. *Id*. at 206a-07a. Martinucci acknowledged, however, that he did not recall either the Board or Council objecting to Cooper's testimony at the supplemental hearing. *Id*. at 201a. Doyle added that the trial court could treat Cooper's testimony as permissible rebuttal evidence or as new testimony, but she would object if the latter. *Id*. at 222a. The trial court expressed an inclination that Cooper's testimony as an expert at the supplemental hearing was permissible but stated that its decision on that issue was not final at that time. *Id*. at 202a.

On April 5, 2022, the trial court issued its decision and order denying Ferguson's appeal and upholding the Board's grant of the variance. Trial Ct. Op.; O.R. #24. The trial court referenced its June 2021 order directing the Board to "conduct a supplemental hearing to permit Ferguson to cross-examine witnesses and present evidence and that Greenfield had done so, but also presented Cooper." *Id*. at 5. The trial court stated that the Board "did not make any additional findings," but the trial court did not otherwise address the supplemental hearing; the trial court then reviewed the record for substantial evidence under the deferential standard of review for substantial evidence, which is applicable where a court has taken no new evidence.[6] *Id*. at 5-6.

The trial court found the Board's conclusion that PERE had established a hardship was supported by substantial evidence because the lots were hemmed in by existing nonconforming structures on the adjacent lots. Trial Ct. Op. at 8-9. The trial court agreed with the Board that the 84.6-foot variance for front yard parking and a driveway was the least modification necessary under the circumstances and that the variance would not alter the essential character of the surrounding

---

[6] When the trial court does not take additional evidence in a variance matter, our review is limited to determining whether the zoning board committed an error of law or abused its discretion, which occurs when the board's findings of fact are not supported by substantial evidence. *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 148 n.1 (Pa. Cmwlth. 2011).

neighborhood. *Id.* at 8-9. The trial court concluded that the Board had not committed either legal error or an abuse of discretion in granting the variance. *Id.* at 9-10. Ferguson appealed to this Court.

## II. Discussion

Ferguson first argues that the trial court erred in applying a "substantial evidence" or quasi-appellate standard of review rather than a *de novo* standard to the testimony and evidence from the July 2021 supplemental hearing. Ferguson also argues that, on the merits, the Board and the trial court both erred in concluding that PERE established all required elements for the variance.

Section 1005-A of the Pennsylvania Municipalities Planning Code (MPC)[7] states:

> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may *remand* the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence . . . . If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. If the record does not include findings of fact *or if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any*.

---

[7] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329.

9

53 P.S. § 11005-A (emphasis added). In *Sowich v. Zoning Hearing Board of Brown Township*, 214 A.3d 775 (Pa. Cmwlth. 2019), a common pleas court granted a landowner's "motion to present additional evidence" and remanded the case to the zoning board to supplement the record and take additional evidence on specific factual matters that had not been squarely before the board when it considered whether the landowner's use of its property was a lawful nonconforming use. *Id*. at 780-81. At the remand proceeding before the zoning board, numerous witnesses who had not previously appeared were called to testify on the remand subject matter. *Id*. at 782. After the remand proceeding, the board did not make additional findings or conclusions or alter its decision against the landowner; it simply indicated that the record was to return to the common pleas court for further proceedings. *Id*. at 782.

When the matter returned to the common pleas court, that court applied the deferential substantial evidence standard to the entire post-remand record and affirmed the board's decision. 214 A.3d at 782-83. On the landowner's appeal to this Court, we noted that the common pleas court was not required to take additional evidence itself in order to engage in fact-finding based on the post-remand record. We construed Section 1005-A as follows:

> First, a trial court properly makes its own findings if a record being reviewed by the court does not include findings . . . . Second, as is often noted in the case law, the court also acts appropriately in making its own findings if it takes additional evidence. Third, the court generally may be precluded from making its own findings if the record includes findings and the court does not take additional evidence.

*Id*. at 784-85 (quoting *Koutrakos v. Zoning Hearing Bd. of Newtown Twp.*, 685 A.2d 639, 641-42 (Pa. Cmwlth. 1996)). In *Sowich*, because the zoning board failed after remand proceedings to account for the new substantive evidence in any way, we

10

concluded that, under Section 1005-A, the common pleas court was required to make *de novo* findings of fact on the evidence from the specific issue addressed in the remand; we therefore remanded to the common pleas court for that purpose. *Id*. at 785 & 790.

Ferguson, relying on *Sowich*, argues that this case must be remanded to the trial court for it to apply a *de novo* rather than deferential standard to the record from the supplemental hearing and to produce a new opinion with factual and credibility determinations based on the supplemental hearing. Ferguson's Br. at 13-16. The Board responds that both Ferguson's motion and the trial court's order directing the supplemental hearing emphasized that its purpose was not for the introduction of substantively new evidence, but simply to allow Ferguson to cross-examine PERE's witnesses from the December 2020 hearing; as such, Cooper should not have been permitted to testify. Board's Br. at 5. According to the Board, the trial court did not actually receive any new evidence and was not required to make *de novo* findings or determinations. *Id*. at 6. The Board adds that even if the trial court erred in its approach, any such error was harmless because the record and trial court decision are sufficient for effective review by this Court. *Id*. at 7.

Ferguson's "motion for additional evidence" to the trial court asked primarily for the opportunity to cross-examine PERE's witnesses from the previous proceeding. *See* O.R. #13 at 6. The trial court's June 2021 order granting Ferguson's motion likewise focused on cross-examination of PERE's witnesses. R.R. at 236a. We note that cross-examination testimony is itself substantive evidence. Black's Law Dictionary (11th ed. 2019) (defining "testimony" as "[e]vidence that a competent witness under oath or affirmation gives in a [legal proceeding]"). However, the trial court's phrase that Ferguson "shall be permitted to cross examine

witnesses *and present evidence*" opened the door for Ferguson to present Cooper's testimony and the trial court did not ultimately strike Cooper's testimony or the new evidence of his counter-renderings of a smaller-scale compliant version of the project. O.R. #13 at 6 (emphasis added).

In *Sowich*, the purpose of the common pleas court's formal remand was to supplement the record by securing additional substantive evidence on a specific issue that had not been before the zoning board at the initial proceedings; additional witnesses testified on the new subject matter. 214 A.3d at 781-82. Here, although the trial court did not expressly remand the matter, instead characterizing the proceeding as a "supplemental hearing," the practical result was the same as in *Sowich*: new evidence was added to the record, specifically the cross-examination testimony of Gesue and Weber and Cooper's "new" testimony and renderings. As in *Sowich*, the Board here did not consider or comment on the new evidence, likely because of Doyle's statement that, in the absence of a formal remand or direct order by the trial court to incorporate and reconsider the evidence after the supplemental hearing, the Board was authorized only to conduct the hearing and return the matter to the trial court. R.R. at 103a-05a, 145a, 200a & 206a-07a.

In *Sowich*, the remand was for the zoning board to take additional evidence on a discrete factual issue; it was therefore possible for the trial court, post-remand, to consider that specific evidence *de novo*. Here, however, the trial court did not return the matter to the Board for additional evidence on a discrete issue. Instead, the court ordered the Board to hold supplemental proceedings so that Ferguson could cross-examine PERE's witnesses and provide rebuttal evidence, both of which pertained to the variance inquiry as a whole. The evidence from the July 2021 supplemental hearing therefore cannot be considered separately from the

12

evidence from the Board's original December 2020 proceedings. Thus, the trial court should have instructed the Board to revise its decision in accordance with the new evidence from the supplemental hearing.

### III. Conclusion

The trial court's failure to instruct the Board to revise its decision means that although the evidentiary record before this Court is complete, there is no decisional foundation from the Board providing a first-hand evaluation of the evidence from the supplemental hearing. Moreover, the trial court could not have performed its own evaluation of the evidence from the supplemental hearing due to the interrelated nature of the evidence from the supplemental and original proceedings. Accordingly, the trial court's order is vacated, and this matter is remanded to the trial court for further remand to the Board for preparation of a written decision with findings and conclusions based on the record evidence from both the initial and supplemental hearings.[8]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[8] In light of our disposition to remand this matter, we do not reach the merits of Ferguson's appeal.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janet H. Ferguson,  :
                Appellant  :
                  :
      v.  :
                  :
Zoning Hearing Board  :  No. 437 C.D. 2022
of the City of Erie  :

## O R D E R

AND NOW, this 16th day of June, 2023, the April 5, 2022, decision and order of the Court of Common Pleas of Erie County (trial court) affirming the January 3, 2021, decision of the Zoning Hearing Board of the City of Erie (Board), which approved a dimensional variance sought by PE Real Estate Holdings, LLC, is vacated. This matter is remanded to the trial court for further remand to the Board for preparation of a written decision with findings and conclusions based on the record evidence from both the initial and supplemental hearings.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge